**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

JAN M. GAWLIK,                         :
      Plaintiff,                      :
                              :    Civil No. 3:21-cv-743 (OAW)
      v.                              :
                              :
STEVEN STROM, et al.,                  :
      Defendants.                     :
                              :
                              :

## <u>RULING ON DEFENDANTS' MOTION TO DISMISS</u>

Self-represented Plaintiff, Jan M. Gawlik, filed a complaint pursuant to 42 U.S.C. § 1983 purporting to assert claims for violation of his rights under the Americans with Disabilities Act and the Rehabilitation Act. Within the complaint, Mr. Gawlik listed numerous state and federal statutes and other federal constitutional violations. On initial review, the court (*Hon. Sarah A. L. Merriam, J.*[1]), severed the claims in Count Two and dismissed all but one claim in Count One. *See* ECF No. 25 at 40–41. The remaining claims are retaliation claims against Assistant Attorney General Steven Strom, Freedom of Information ("FOI") Liaison Linda McMahon, Captain Rodriguez, Counselor Supervisor Heide Roberts, and Counselor Veronica Rogers in their official capacities for injunctive and declaratory relief, and in their individual capacities for damages. *See id.* at 41. Defendants move to dismiss, arguing (1) Plaintiff has failed to allege plausible retaliation claims, (2) they are protected by qualified immunity on the individual-capacity claims for damages, and (3) the Eleventh Amendment and sovereign immunity bar the official-capacity claims for declaratory and injunctive relief. Defendants' motion to dismiss is **<u>GRANTED</u> in part** for the following reasons.

---

[1] Judge Merriam was a district judge at the time of the ruling, but is now a circuit judge.

I.      **STANDARD OF REVIEW**

To withstand a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  The plausibility standard is not a probability requirement, but the pleading must show, not merely allege, that the pleader is entitled to relief.  *Id.*  Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth.  *Id.* (quoting *Twombly*, 550 U.S. at 555).  "To state a plausible claim, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'"  *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555) (alteration in original).  However, when reviewing a motion to dismiss, the court must accept as true the complaint's asserted facts and draw all reasonable inferences in the non-movant's favor.  *Graziano v. Pataki*, 689 F.3d 110, 114 (2d Cir. 2012).

The district court may entertain a motion to dismiss directed to a claim that was permitted to proceed on initial review.  *See Allah v. Semple*, No. 3:18-CV-887(KAD), 2019 WL 109002, at *5 (D. Conn. Jan. 4, 2019) ("[T]he fact that the court permitted the . . . claim to proceed in its Initial Review Order does not preclude a motion to dismiss under Rule 12(b)(6) and a subsequent finding by the court, after entertaining such a motion, that the claim fails to satisfy the plausibility standard. . . ."); *see also Smalls v.*

*Wright*, No. 3:16-cv-2089(JCH), 2017 WL 3474070, at *4 (D. Conn. Aug. 11, 2017) (noting that the court may not be able to determine whether a complaint states a cognizable claim absent an adversarial presentation).

## II.   **BACKGROUND**

As recounted in the Initial Review Order,[2] the events underlying the complaint occurred while Plaintiff was confined at Cheshire Correctional Institution.  ECF No. 1 at ¶ 4.  Plaintiff began receiving Social Security Disability Insurance ("SSDI") benefits in 1996.  *Id.* at ¶ 18.  He was receiving benefits when he was taken into custody in 2011 and continued to receive SSDI benefits for several years while he was incarcerated.  *Id.* at ¶¶ 20, 25.   Plaintiff's "accumulated social security disability benefits for nearly (23) years are continually deposited by (third party) or guardian and/or committee into" his inmate account.  *Id.* at ¶ 27 (emphasis omitted).

In April 2015, the State of Connecticut sued Plaintiff, seeking reimbursement for the cost of his incarceration.[3]  *Id.* at ¶ 28.  At the time, Plaintiff had $13,580.00 in his inmate account.  *Id.* at ¶ 30.  On March 8, 2016, the Superior Court found Plaintiff's disability benefits to be "exempt pursuant to C.G.S. Section 52-352b", ECF No. 1-1 at 19, which exempts such benefits from attachment.  Conn. Gen. Stat. § 52-352b (7).

---

[2] Plaintiff attempts to adduce new facts in his opposition to the motion to dismiss.  When considering a motion to dismiss, the court's review is confined to the facts alleged in the complaint unless the court elects to convert the motion to dismiss into a motion for summary judgment.  *See Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).  The court does not so elect here.  Nor can Plaintiff amend his complaint through his memorandum.  *See Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (declining to consider facts a party asserted for the first time in a memorandum in opposition to a dispositive motion); *Purugganan v. AFC Franchising, LLC*, No. 3:20-CV-00360(KAD), 2021 WL 5301522, at *4 (D. Conn. Nov. 15, 2021) (stating that a plaintiff cannot amend a complaint through a memorandum).  Thus, the court does not consider in this discussion any of the additional facts asserted in the memorandum.
[3] *State v. Gawlik*, No. HHD-CV15-5039424S.

Defendant Strom was "aware of the cost of incarceration" decision.  ECF No. 1 at ¶ 37.  After that decision was issued, Plaintiff filed an action in Superior Court[4] and was granted *in forma pauperis* status in the case.  *Id.* at ¶ 40.  Defendant Strom moved to revoke Plaintiff's *in forma pauperis* status and to impose sanctions on Plaintiff.  *Id.* at ¶¶ 40–45.  Plaintiff filed a second action in state court[5] in which he also was allowed to proceed *in forma pauperis*, and Assistant Attorney General Jacob McChesney[6] moved to revoke *in forma pauperis* status in the second case, as well.  *Id.* at ¶¶ 42–43, 45.

Plaintiff alleges that when Defendant Strom and AAG McChesney moved to revoke his *in forma pauperis* status in state court, they failed to inform the state court that "the monies in the sanctions originate from Social Security disability benefits".  *Id.* at ¶ 45.  Referring to the state court ruling that "monies within [Plaintiff's] inmate trust fund" were found to be exempt from attachment pursuant to C.G.S. §52-352b, Plaintiff alleges that both Defendant Strom and AAG McChesney "were and are aware" of that ruling. *Id.* at ¶ 44.  Plaintiff further suggests the ruling went on to hold that such funds cannot be applied to litigation costs such as filing fees and service of process, due to Plaintiff's indigency, and pursuant to C.G.S. § 52-259b, *see id.*, but the order lacks mention of Plaintiff's indigency, and any citation to the fee waiver statute, *see* ECF No. 1-1 at 19. This discrepancy was noted by Judge Merriam upon initial review, in a determination that Plaintiff's statement is a misreading or a misrepresentation of the state court ruling. ECF No. 25 at 7.

Each motion to revoke Plaintiff's *in forma pauperis* status was denied.  ECF No.

---

[4] *See Gawlik v. Semple, et al.*, No. HHD-CV16-5036776S.
[5] *See Gawlik v. Semple*, No. NNH-CV19-5044843S.
[6] AAG McChesney is no longer a defendant in this action.

1 at ¶¶ 47–48.  Plaintiff attached to his complaint the ruling from one of the cases, in which the Honorable Judge Robert E. Young states, "There is a presumption of indigency based on income under § 52-259b(b) and SSDI payments constitute an asset within the scope of § 52-259b(b)(2)."  ECF No. 1-1 at 37.  The state court also acknowledged that "[t]here is no question that the plaintiff has misrepresented his financial condition under oath in the applications [for *in forma pauperis* status]."  *Id.* at 34.  On March 25, 2020, nine days after Judge Young's ruling, Defendant Strom sent an email to Defendant McMahon (the "Strom Email").  ECF No. 1 at ¶ 52–53.  The email appears to respond to one from Defendant McMahon, though that message was not included with the one attached to the complaint.  ECF No. 1-1 at 38.  Plaintiff alleges Defendant Strom said "to charge plaintiff (<u>Gawlik</u>) for every and <u>any</u> piece of document (<u>Gawlik</u>) requests, even that other inmates recieve [sic] the document (<u>free</u>) or without charge that DOC are obligated to furnish."  ECF No. 1 at ¶ 53 (emphasis in original).

The Strom Email itself states (in relevant part):

> I have attached the decision from Judge Young.  Judge Young only waived the court filing fees.  He did not waive DOC copying fees, and he is not indigent—so my recommendation is that you calculated [sic] the number of pages he wants copied, then he must prepay for the copies by following your procedures—signing a slip authorizing the copy fees come out of his inmate trust account, if he pays—he gets the copies—if he does not—then I would recommend no copies.  The statute cited in the Judges [sic] decision only covers fees payable to the court—or fees for service of process—which the court has authority to waive—the court cannot tell DOC to give him free copies, at least not without notice to us, and an opportunity to argue against it—By the way—I believe the Judge's Decision [sic] is incorrect—but it is what it is ...

ECF No. 1-1 at 38.

The message was forwarded by Defendant McMahon to Captain Rodriguez.  *Id.* That same day, Plaintiff gave Defendant Rogers documents relating to a federal lawsuit

for copying.  ECF No. 1 at ¶ 57.  Later that day, Defendants Rodriguez and Rogers told Plaintiff that he "must from now on pay for all copies and documents from [his] inmate trust funds disability benefits."  *Id.* at ¶ 61 (emphasis omitted).  Defendant Rodriguez had a copy of the Strom Email when he spoke to Plaintiff.  *Id.* at ¶ 62.  Defendant Rogers stated "that she knew that this plaintiff is disabled and that [he] should pay for [his] copies as she agrees with" Defendants Strom and McMahon.  *Id.* at ¶ 63 (emphasis omitted).

On May 11, 2020, Plaintiff filed a motion for sanctions in one of the state actions, claiming Judge Young's ruling established "that he is entitled to indigent status," finding his inmate trust fund benefits to be disability benefits, and that therefore he was entitled to "everything that an indigent disabled individual must receive" including clothing, "unlimited legal copies, unlimited FOI copies," and other items.  *Id.* at ¶¶ 66–68.  The state court held that Plaintiff's motion was beyond the scope of the action before it and noted that Plaintiff could pursue the claim in a separate action.  *Id.* at ¶ 70.

On June 23, 2020,[7] Plaintiff submitted a request to Defendant McMahon "for civil copies" of a case in which he was not directly involved.  *Id.* at ¶ 81.  On June 26, 2020, Defendant McMahon denied the request, stating that "plaintiff must pay for copies . . . ." *Id.* at ¶ 82.  Plaintiff filed a grievance regarding the denial, which was returned without disposition by Chad Green, then Administrative Remedies Coordinator (ARC) (and later promoted to Counselor Supervisor[8]).  *Id.* at ¶¶ 84–86.

On July 2, 2020, Plaintiff wrote to FOI Administrator Anthony Campanelli[9]

---

[7] Plaintiff lists the year as 2021, but the record shows this to be a typographical error; the year was 2020.
[8] Counselor Supervisor Green is no longer a defendant in this action.
[9] FOI Administrator Campanelli is no longer a defendant in this action.

requesting copies of the same documents.  *Id.* at ¶ 72-73.  Plaintiff requested that any

fees for the copies "be waived due to indigent status as a disabled individual[.]"  *Id.* at ¶

75.  On July 16, 2020, FOI Administrator Campanelli responded that Plaintiff was

indigent for purposes of filing fees in Superior Court and for the cost of incarceration,

but that he did not meet the standard of indigence in the Department of Correction

Administrative Directives.  *Id.* at ¶ 77.  Plaintiff alleges that Defendant McMahon

"notified" FOI Administrator Campanelli about the Strom Email.  *Id.* at ¶ 79.

When Plaintiff asked Defendant Rogers for copies of documents from the state's

judicial website, she told him that due to the Strom Email, all correctional staff were

required to charge Plaintiff for documents.  *Id.* at ¶ 91.  Plaintiff complained to his unit

manager, Defendant Roberts, who informed him that "she received emails from all

administration . . . pertaining to . . . charging this plaintiff for every and all documents

requested by (Gawlik)."  *Id.* at ¶ 94 (emphasis omitted).

Plaintiff filed a grievance about the issue.  *Id.* at ¶ 95.  Upon receiving the

grievance, Counselor Supervisor Green contacted AAG McChesney seeking help

understanding Plaintiff's indigency status and the import of the prior state court rulings,

noting that it did not appear as though Plaintiff was entitled to receive social security

payments while imprisoned, and that the payments should have terminated entirely

(subject to reapplication) upon incarceration for twelve straight months.  *Id.* at ¶¶ 96–97.

AAG McChesney forwarded the email to Defendant Strom, who stated: "Gawlik seems

to claim—albeit erroneously—that he should not have to pay for anything—copies,

envelopes, etc[.]—when he has more money in his inmate account than I have in my

checking account!"  *Id.* at ¶¶ 98–99.  Defendant Strom suggested a response that

Counselor Supervisor Green could give to Plaintiff's grievance.  *Id.* at ¶ 101.  Office of

Legal Affairs Director Nicole Anker confirmed: "You don't get free copies in civil cases.

And, in any case, how can he not afford copies with over $13,000 in the bank?"  *Id.* at

¶¶ 103–05.

On July 15, 2020, Warden Butricks signed the response to Plaintiff's grievance,

even though the response was written by Defendant Strom.  *Id.* at ¶ 110.  District

Administrator Nick Rodriguez responded to the grievance appeal on July 28, 2020,

stating that Warden Butricks's response "was thorough and appropriate," even though

the response submitted by Butricks had been written by Defendant Strom.  *Id.* at ¶ 113.

That same day, Plaintiff filed a "second grievance to redress all the violations by

Defendant Rogers[], who is charging this plaintiff for judicial copies that are free of

charge to inmates" due to the Strom Email.  *Id.* at ¶ 149.  On September 10, 2020, this

grievance was denied as duplicative.  *Id.* at ¶ 155.  Plaintiff appealed the denial on

September 11, 2020.  *Id.* at ¶ 156.

On July 23, 2020, Plaintiff wrote to Director Anker, asking why he was "being

charged for . . . access to court . . . documents" when they should be free of charge  to

inmates such as he, and arguing that the state court rulings mean that his inmate funds

"are exempt from execution and constitutes this disabled incarcerated individual

indigent."  ECF No. 1-1 at 71–72.  Director Anker responded that Plaintiff should use the

administrative remedy process as required, and that writing to her (or to Staff Attorney

O'Brasky) "cannot serve as a means to circumvent that process."  *Id.* at 69.

On September 16, 2020, Plaintiff wrote to Commissioner Quiros, arguing that the

Superior Court decisions required the DOC to treat him as indigent for all purposes and

to provide clothing, copies, and all other materials to him without charge. *Id.* at 61.

Staff Attorney O'Brasky responded to the letter to the Commissioner, stating:

> It is correct that, pursuant to Conn. Gen. Stat § 18-85a(b)(1), the State may not attach your Social Security benefits for reimbursement of the cost of incarceration and that the Court, pursuant to Conn. Gen. Stat. § 52-259, has the discretion to waive court fees based on an individual's reported financial circumstances. However, neither of these limited provisions has any bearing on the fact that you are not an indigent inmate as defined by Administrative Directive 6.10(3)(E) and are, therefore, subject to other costs.

*Id.* at 62.

## III.    DISCUSSION

Defendants move to dismiss this action on three grounds: (1) the copy fee charges do not constitute an adverse action that is able to support a retaliation claim, (2) qualified immunity protects the defendants from any lawsuit seeking damages, and (3) the Eleventh Amendment and the doctrine of sovereign immunity bar Plaintiff's claims for declaratory and injunctive relief.

### A.  Retaliation Claim

Plaintiff's only surviving claim in this case is that the remaining defendants retaliated against him after the state court denied motions to revoke his *in forma pauperis* status of indigence.

To state a cognizable retaliation claim, Plaintiff must allege facts establishing three elements: "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Burns v. Martuscello*, 890 F.3d 77, 84 (2d Cir. 2018) (quoting *Dolan v. Connolly*, 794 F.3d 290,

294 (2d Cir. 2015)).

On initial review, the court found the first element satisfied, and Defendants do not challenge that determination.

Regarding the second element (adverse action), the court noted, "Common sense dictates that financial penalties or costs may serve as deterrents." ECF No. 25 at 26. The court acknowledged that the adverse action must be serious enough to "deter a similarly situated person of ordinary firmness from exercising his right to speech," *id.* (citing *Burns*, 890 F.3d at 93–94), and determined, "Absent additional information regarding the number of copies for which plaintiff was charged and the number that allegedly would have been free to all other inmates, the Court cannot determine whether this action would deter a reasonable inmate from exercising his rights," *id.* Thus, the court assumed, for purposes of initial review, that Plaintiff sufficiently alleged that he suffered an adverse action.

For the third element (causal connection), the court separately considered the allegations against each defendant. The court permitted the claim to proceed against Defendants Strom, McMahon, Rodriguez, Rogers, and Roberts based on Plaintiff's allegations (1) that the Strom Email directed Defendant McMahon to charge Plaintiff for all copies, and expressed disagreement with the state court ruling, and (2) that Defendants McMahon, Rodriguez, Rogers, and Roberts relied on the Strom Email in charging Plaintiff for all copies.

Defendants now argue that copy fees do not constitute an adverse action, and that fees of $.25 per page are *de minimis*. The court agrees with Defendants that Plaintiff has no constitutional right to free copies. *See, e.g., Muhammad v. Hodge*, No.

07-CV-0232(Sr), 2010 WL 1186330, at *5 (W.D.N.Y. Mar. 24, 2010) ("Courts in the Second Circuit have repeatedly held that a prisoner does not have a constitutional right to free copies. . . ."). However, the adverse action in a retaliation claim need not rise to the level of a constitutional violation. *See Zielinski v. Annucci*, 547 F. Supp. 3d 227, 232 (N.D.N.Y. 2021) ("[V]irtually any adverse action taken by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act.") (quoting *Barnes v. Harling*, 368 F. Supp. 3d 573, 599 (W.D.N.Y. 2019)).

Defendants further argue that the court should not have analogized this claim to the failure to pay an inmate. But the court did not equate the denial of free copies to a claim for lack of payment of wages. Rather, the court cited to a prison wages case in support of the conclusion that financial penalties (or costs, if large enough) could deter an inmate from exercising their First Amendment rights. The court permitted Plaintiff's claim to proceed because the record contained no information regarding the number of copies involved and, specifically, the number of copies for which Plaintiff was charged and that would have been provided for free to any other inmate (including to those who are not found to be indigent). Defendants' motion still does not provide this information.

To be fair, it also appears that there is absolutely no support in the record for Plaintiff's repeated suggestions that other inmates (even those who are not indigent) regularly obtain photocopies free of charge. This claim is not supported by the Judge Young ruling, by the Strom Email, by the FOI administrator's reference to the DOC administrative directives, by Director Anker's communications, by Staff Attorney O'Brasky's letter to Plaintiff, by the findings of the Superior Court, or upon initial review

of Plaintiff's claims.  There literally appears to be zero support for Plaintiff's contention.

Nevertheless, the law requires Plaintiff's claims to be "accepted as true," *Iqbal*, 556 U.S.

at 678 (quoting *Twombly*, 550 U.S. at 570); *Graziano v. Pataki*, 689 F.3d at 114, and the

court must operate "on the assumption that all the allegations in the complaint are true

(even if doubtful in fact)," *Twombly*, 500 U.S. at 555, because "Rule 12(b)(6) does not

countenance . . . [it does not tolerate] dismissals based on a judge's disbelief of a

complaint's factual allegations."  *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).

Still, Defendants contend the court should reject Plaintiff's retaliation claim under

the rationale in *Wallace v. Beldsoe*, No. 1:CV-10-0225, 2010 WL 1565571 (M.D. Pa.

Mar. 16, 2010).  In that case, the prisoner asserted retaliation and access-to-courts

claims based on the denial of free copies.  *Id.* at *1.  The court determined that the

plaintiff failed to show an actual injury to support his access-to-courts claim and

concluded that it need not address the retaliation claim that had been based on copies

needed for that litigation.  *See id.* at *10.  Here, however, Plaintiff does not claim denial

of access to the courts, and it does not appear that all of his requested copies related to

his ongoing litigation.  Thus, the analysis in *Wallace* is inapplicable here.

Finally, Defendants argue that the copy charges are *de minimis* and that they

cannot constitute an adverse action.  They contend that all other inmates who are not

indigent must pay for copies and are not deterred from exercising their First Amendment

rights to file lawsuits.  Defendants compare the ($.25 per page) copy cost with the

($402.00) filing fee for federal cases, and contend that the copy charges are nominal

and that they would not deter an inmate from filing lawsuits.  However, they fail to

consider that many inmates are permitted to file federal lawsuits *in forma pauperis* and,

thus, need not prepay the filing fee.

Defendants also argue that Plaintiff could hand-write his copies or make a duplicate when he creates the original on a typewriter. They contend that if Plaintiff did not create the document, he could seek a court order that a copy of a specific document be made for him without charge. And finally, Defendants point out that Plaintiff has filed two other cases besides this one, proving that the copy charges had no chilling effect.

As to the chilling-effect argument, the United States Court of Appeals for the Second Circuit (in the prison context) applies an objective test to determine whether an adverse action occurred, "without regard for whether the plaintiff himself was actually chilled." *Gill v. Pidlypchak*, 389 F.3d 379, 384 (2d Cir. 2004). An "adverse action" often is unwarranted punishment, such as "the filing of false misbehavior reports", *id.* at 384, which the courts notes is distinguishable from removing a discretionary benefit. The latter might be less objectively chilling than the former. It is akin to a criminal defendant rejecting a prosecutor's offer and instead invoking their right to a trial, only to have the prosecutor withdraw the pre-trial offer. Withdrawal of the rejected offer does not expose the defendant to an unlawfully enhanced sentence. *See, e.g., Bordenkircher v. Hayes*, 434 U.S. 357 (1978) (upholding a prosecutor's ability to withdraw an offer if it is rejected by a criminal defendant, as plea bargaining does not violate the Due Process Clause of the Fourteenth Amendment); *see also United States v. Torres-Echavarria*, 129 F.3d 692 (2d Cir. 1997) (affirming a defendant's conviction and sentence after the district court rejected the parties' original plea agreement). Adverse action also is different from denial (or termination) of a benefit to which a plaintiff was not entitled. *See, e.g., Giacopelli v. Inc. Vill. of Malverne,* 829 F. Supp. 2d 131, 145 (E.D.N.Y. 2011) (finding

13

that the calculation of an officer's retirement benefits was not an adverse action for purposes of a retaliation claim where the calculation was controlled by statute). Where any action is warranted by objective considerations, it is less likely to be satisfy the "adverse action" test. For example, if Plaintiff is not entitled to receive social security benefits while he is a sentenced prisoner, and if distribution of those benefits were to be discontinued upon a realization that Plaintiff is serving a prison sentence, then that termination of the unjust disbursement of benefits would not be retaliation.[10] Refusing to honor a sale price after the sale has expired is not the same as retaliation or punishment when the prospective buyer is not entitled to that benefit.

Similarly, it would seem that refusing to provide free photocopies to Plaintiff would not be an adverse action (especially as to copies of documents unrelated to his cases) if the same type of photocopies are not offered for free to similarly-situated inmates. However, the record is unclear as to whether other inmates truly would have been given free photocopies when Plaintiff was forced to pay, and the parties have not answered the call for additional information that was presented upon initial review (namely, the cost and quantity of Plaintiff's requested copies as compared to the copies that would have been free of charge as to other inmates, including those who are not indigent). That information remains a mystery, so the court still cannot determine whether Defendants' actions were so *de minimus* that they would not deter an individual

---

[10] Indeed, in cases where a plaintiff is permitted to proceed *in forma pauperis*, 28 U.S.C. § 1915 (e)(2)(a) instructs the court that it "shall **dismiss** the case at any time if the court determines that -- the allegation of poverty is untrue" (even if the determination comes after payment of the filing fee) (emphasis added). In such cases, the court can consider untruthful statements about poverty (including as to money in an inmate trust account that is not reported at the time of the motion), and an inmate can be forced to pay fees associated with the case, in installments. *See Nicholas v. Tucker*, 114 F.3d 17 (2d Cir. 1997) (citing 28 U.S.C. § 1915 (b)(1)). *But cf. Arzuaga v. Quiros*, 781 F.3d 29, 33–35 (2d Cir. 2015) (finding that deposits into an inmate account after the motion to proceed *in forma pauperis* is filed need not be so reported).

of ordinary firmness from exercising a constitutional right, and thus whether they are insufficient to support a retaliation claim.   Accordingly, Defendants do not persuade the court to grant the motion to dismiss.

### B.  Qualified Immunity

Defendants next argue that they are protected by qualified immunity on any claims for money damages.  Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Qualified immunity "affords government officials 'breathing room' to make reasonable –even if sometimes mistaken—decisions. . . ." *Distiso v. Cook*, 691 F.3d 226, 240 (2d Cir. 2012) (quoting *Messerschmidt v. Millender*, 565 U.S. 535, 553 (2012)).  "The qualified immunity standard is 'forgiving' and 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Grice v. McVeigh*, 873 F.3d 162, 166 (2d Cir. 2017) (quoting *Amore v. Navarro*, 624 F.3d 522, 530 (2d Cir. 2010)).

"In determining whether state actors are entitled to qualified immunity under federal law, [the court] consider[s] two factors: (1) whether the facts presented 'make out a violation of a constitutional right'; and (2) whether the right at issue was 'clearly established' when it was allegedly violated." *Torcivia v. Suffolk Cty., New York*, 17 F.4th 342, 367 (2d Cir. 2021) (quoting *Taravella v. Town of Wolcott*, 599 F.3d 129, 133 (2d Cir. 2010)).  The court has discretion to determine which factor to address first. *Pearson*, 555 U.S. at 236.

"Only Supreme Court and Second Circuit precedent existing at the time of the

alleged violation is relevant in deciding whether a right is clearly established."  *Torcivia*,

17 F.4th at 367 (quoting *Moore v. Vega*, 371 F.3d 110, 114 (2d Cir. 2004)).  "In

evaluating these two factors, [the court] look[s] to 'the specific context of the case' at bar

rather than 'broad general proposition[s].'"  *Id.* (quoting *Mullenix v. Luna*, 577 U.S. 7, 12

(2015)) (last alteration in original).  "A clearly established right is one that is 'sufficiently

clear that every reasonable official would have understood that what he is doing violates

that right.'"  *Mullenix*, 577 U.S. at 11 (quoting *Reichle v. Howards*, 566 U.S. 658, 664

(2012)).  There is no requirement that precedent be directly on point, "but existing

precedent must have placed the statutory or constitutional question beyond debate."

*Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

Qualified immunity may be successfully asserted on a motion to dismiss, but the

defense "faces a formidable hurdle" at the pleading stage.  *Horn v. Stephenson*, 11

F.4th 163, 169-70 (2d Cir. 2021) (quoting *McKenna v. Wright*, 386 F.3d 432, 434 (2d

Cir. 2004)).  At this stage, the court draws all reasonable inferences in favor of the

plaintiff, which inferences may both support the plaintiff's claim and defeat the qualified

immunity defense.  *Hyman v. Abrams*, 630 F. App'x 40, 42 (2d Cir. 2015).

Defendants first argue that Defendant Strom is protected by qualified immunity

for rendering legal advice to correctional employees.  The Supreme Court has held that

a prosecutor is protected by qualified immunity, but not absolute immunity, for legal

advice given to police as long as he could not be "expected to know that his [advice]

would violate statutory or constitutional rights . . . ."  *Burns v. Reed*, 500 U.S. 478, 494-

95 (1991) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 524 (1985)).

The court has reviewed the email message attached to the complaint.  *See ATSI*

*Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (stating that when considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), in addition to allegations in the complaint, the court "may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, . . . and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit.").  The message shows that Defendant Strom was responding to an inquiry from Defendant McMahon.  It is not, as Plaintiff alleges, an unsolicited order to deny him free copies.  *See Endemann v. Liberty Ins. Corp.*, 390 F. Supp. 3d 362, 370 (N.D.N.Y. 2019) ("When documents attached to the complaint as exhibits or incorporated by reference in the complaint contain statements that contradict the allegations in the complaint, the documents control and the [c]ourt need not accept the allegations as true.") (citing *Roth v. Jennings*, 489 F.3d 499, 510-11 (2d Cir. 2007)).  In the email, Defendant Strom considered the state court ruling and the DOC directive and advised that the state court ruling did not affect the application of the directive.  Thus, he was providing legal advice, an action within his official duties.  The fact that Defendant Strom also included his personal opinion in the message does not, as Plaintiff contends, negate the fact that he provided a legal opinion to Defendant McMahon.  Thus, Defendant Strom is protected by qualified immunity.

Defendants next argue that the remaining defendants are protected by qualified immunity because they relied on the legal advice in the Strom Email.  In addressing these claims, Defendants consider the constitutional right at issue as the right to receive free copies, and they argue that there is no such constitutional right.  However, Defendants inaccurately frame the issue.  Plaintiff asserts retaliation in violation of the

free exercise of his clearly-established First Amendment rights. *See Farid v. Goord*, 200 F. Supp. 2d 220, 245 (W.D.N.Y. 2002) ("A prisoner's right against retaliation for engaging in protected First Amendment activities, such as petitioning the government for redress of grievances, has been clearly established since at least 1988 . . . .").

Plaintiff alleges that Defendant Strom directed Defendant McMahon to charge him for all copies, even those provided for free to other inmates. The email message belies this interpretation. Defendant Strom merely advised that Plaintiff be charged for copies in accordance with the directive. Still, drawing all inferences in Plaintiff's favor, as the court must when reviewing a claim of qualified immunity on a motion to dismiss, Plaintiff alleges that the remaining defendants went beyond application of the directive, and that they charged him for copies that are provided to other inmates free of charge (regardless of indigency). As the court noted above, the record contains no support for the claim that inmates other than those who are indigent were given free photocopies, and it contains no information regarding the number of copies requested by Plaintiff (nor their associated costs). Thus, based on the current record, the court cannot determine whether a reasonable officer would understand that charging Plaintiff for his copies would violate his right to be free from retaliation.

Defendants' motion to dismiss based on qualified immunity is granted as to Defendant Strom but denied as to the remaining defendants.

### C. Declaratory and Injunctive Relief

In his prayer for relief, Plaintiff seeks a declaration that Defendants violated his rights and an injunction directing correctional officials: (1) to grant him indigency status and to provide him multiple items and services free of charge, and also (2) to change

the language in the directive defining indigency so as to increase the dollar amount and to exclude SSDI benefits from consideration.  ECF No.1 at 43–45.  Defendants argue that they are protected from Plaintiff's requests for declaratory and injunctive relief in their official capacities by state sovereign immunity and by the Eleventh Amendment.

      1.   *Injunctive Relief*

Naming a defendant in his official capacity is merely "another way of pleading an action against the entity of which an officer is an agent."  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.5 (1978)).  Generally, "absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court."  *Id.* at 169.  But a claim for prospective relief may proceed against a state official for an ongoing violation of federal law.  *Morabito v. New York*, 803 F. App'x 463, 466 (2d Cir. 2020); *see also Ex parte Young*, 209 U.S. 123 (1908) (establishing this exception to Eleventh Amendment immunity).

Thus, Plaintiff's claims against Defendants in their official capacities actually are claims against the State of Connecticut.  And while Connecticut has not waived Eleventh Amendment immunity, and there has been no congressional override, Plaintiff clearly asks for prospective relief from an alleged ongoing constitutional violation. Defendants argue that this exception is not applicable as there is no constitutional right to free copies.  But as the court previously stated, the right at issue is the right to be free from retaliation for exercising First Amendment rights.  And as Defendants have not addressed the correct constitutional violation in their argument, the motion to dismiss is denied as to the request for injunctive relief.

Defendants also assert common law sovereign immunity.  However, they concede that there is an exception "when an action seeks declaratory or injunctive relief on the basis of a substantial claim that the state or one of its officers has violated the plaintiff's constitutional rights...."  ECF No. 56-1 at 20 (quoting *Columbia Air Servs., Inc. v. Dep't of Transp.*, 293 Conn. 342, 349, 977 A.2d 636, 643 (2009)).  So, for the same reasons that Defendants have failed to show they are entitled to Eleventh Amendment immunity, they also have failed to show that they are entitled to sovereign immunity.

### 2. *Declaratory Relief*

Declaratory relief serves to "settle legal rights and remove uncertainty and insecurity from legal relationships without awaiting a violation of the rights or a disturbance of the relationship."  *Colabella v. American Inst. of Certified Pub. Accountants*, No. 10-cv-2291(KAM)(ALC), 2011 WL 4532132, at *22 (E.D.N.Y. Sept. 28, 2011) (quoting *Beacon Const. Co., Inc. v. Matco Elec. Co., Inc.*, 521 F.2d 392, 397 (2d Cir.1975)).  As such, it "operates prospectively to enable parties to adjudicate claims before either side suffers great damages."  *Orr v. Waterbury Police Dep't*, No. 3:17-cv-788(VAB), 2018 WL 780218, at *7 (D. Conn. Feb. 8, 2018).  In *Orr*, the court dismissed a request for a declaration that the defendants had violated the plaintiff's Fourth Amendment rights during his arrest because the request "concern[ed] past actions."  *Id.* Plaintiff requests declarations that Defendants violated various constitutional and statutory rights by denying him indigency status.  As these statements all concern past actions, any request for declaratory relief is not cognizable.

**IV.** **CONCLUSION**

Accordingly, it hereby is **ORDERED AND ADJUDGED** as follows:

**1.** Defendants' motion to dismiss [**ECF No. 56**] is **GRANTED in part.**

**2.** Defendant Strom hereby is dismissed from the action.

**3.** Plaintiff's request for declaratory relief is **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1).  All other claims for relief remain active as to all other defendants .

**IT IS SO ORDERED** this 14th day of September, 2023, at Hartford, Connecticut.

_____/s/_____
Omar A. Williams
United States District Judge